CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAR 23 2006
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VERNON L. HENLEY, ) | |
| Plaintiff, ) | Civil Action No. 7:05cv00663 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| DR. DAVID W. BARNES, ) | By: Jackson L. Kiser |
| Defendant. ) | Senior U.S. District Judge |

The plaintiff, Vernon L. Henley, a Virginia inmate proceeding pro se, has filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff alleges that the defendant has failed to provide him with adequate medical treatment in violation of the Eighth Amendment. Plaintiff seeks one million dollars in damages and the immediate termination of his "employment" at the Virginia Department of Corrections.

Dr. Barnes filed a motion for summary judgment. The court notified plaintiff of the defendant's motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised plaintiff that his failure to reply to the defendant's motion may result in dismissal and/or summary judgment being granted for the defendant. Plaintiff has now filed his response to the defendant's motion; thus, the matter is ripe for disposition.

After reviewing plaintiff's complaint, I find that there is no question of material fact and that the defendant is entitled to judgment as a matter of law. Accordingly, I will grant defendant's motion for summary judgment. Moreover, I find that Henley's claims are factually frivolous and, therefore, dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.

Henley alleges that since his transfer to the Botetourt Correctional Center ("BCC"), on July 22, 2005, Dr. Barnes refused to provide him with medical care related to his ongoing health

problems. Specifically, Henley alleges that he is "just about paralyzed" on his left side because he has a "75%" decrease in muscular strength, numbness, and pain in his left leg and back. Henley also claims to have blurred vision in his left eye and reduced hearing in his left ear. Henley believes his ongoing health complaints are the result of a "stroke" and a "bulging disc" in his back which necessitates surgery.

Although Henley admits he has been examined by institutional medical staff and a neurologist for his alleged health problems, has received numerous diagnostic tests to determine the source of his ongoing pain, has participated in physical therapy, and has been prescribed pain medication to alleviate his physical discomfort, he maintains that Dr. Barnes has ignored his complaints regarding his pain and has refused to follow the direction of outside physicians as to the appropriate course of treatment. Henley also laments that throughout this ordeal Dr. Barnes has treated him in a disrespectful and unprofessional manner.

In support of his motion for summary judgment, Dr. Barnes attached Henley's complete medical records. Those records reveal that before and since his transfer to BCC, Henley made numerous medical complaints alleging left sided weakness, numbness, pain, hearing loss, and blurred vision. In response to those complaints, Henley has been examined by institutional medical staff and multiple specialists and has undergone numerous diagnostic tests including x-rays, MRI's, and nerve conductivity tests. Further, those tests revealed that Henley suffered from only a slight weakness in his lower left extremity and minimal degenerative disc disease resulting in a bulging disc, neither of which required surgery, but merely physical therapy and an over-the-counter pain reliever and anti-inflammatory.

Those records detail the following: On July 22, 2005, Henley was transferred to the BCC.

2

At that time, he had a limp, which he claimed prevented him from walking long distances, and used a cane for support. Additionally, Henley took Elavil and Motrin for insomnia and pain, respectively. Henley was assigned a bottom bunk and was afforded temporary permission to retain his cane. Dr. Barnes first examined Henley on July 28, 2005. During the exam, Henley complained again of left sided weakness, numbness, hearing loss, blurred vision, and a pinched nerve, allegedly all caused by a heat stroke he suffered in August, 2004, while imprisoned at the James River Work Center ("JRWC"). Dr. Barnes noted that there was no indication in Henley's medical record that he suffered from a heat stroke or any other related injury while imprisoned at JRWC. However, he noted that in March, 2005, while imprisoned at the Southhampton Work Center ("SWC"), Henley made similar complaints of left sided weakness and numbness, loss of hearing in his left ear, and blurred vision in his left eye, all purportedly caused by the alleged heat stroke at JRWC. In response to those complaints, x-rays were ordered; and, in April 2005, prior to his transfer to BCC, x-rays of Henley's left shoulder, cervical spine, and thoracic spine, yielded normal results and an x-ray of his lumbar spine revealed minimal degenerative disc disease. Dr. Barnes subsequently noted that he believed Henley was malingering and that there was nothing in the record, despite numerous tests and medical exams, which supported Henley's claims. Nonetheless, Dr. Barnes directed that Henley be permitted to retain his cane and his assignment to a bottom bunk and ordered that a neurological exam be administered, but discontinued Henley's current medications.

On August 22, 2005, Henley was examined by Dr. Scialabba at the Roanoke Neurological Center. Dr. Scialabba noted that Henley presented with a left leg limp; however, he stated that Henley's limp may have been out of proportion to the degree of the weakness demonstrated in his left lower extremity during the exam. Furthermore, Dr. Scialabba found that Henley's alleged

3

medical complaints were questionable and opined that secondary gain may be an issue. However, Dr. Scialabba indicated that as Henley was limping and had some degree of weakness in his left leg, a herniated disc could not be ruled out. Accordingly, he recommended an MRI of Henley's brain and lumbar spine. He also stated that as Henley complained of insomnia and depression, reinstating his prescription for Elavil may be beneficial.

On September 7, 2005, MRI scans of Henley's brain and lumbar spine were taken at the Carilion Roanoke Memorial Hospital. The MRI of his brain was normal, showing no signs of stroke or any other abnormality. However, the MRI scan of his lumbar spine showed a central disc protrusion. Accordingly, Dr. Scialabba recommended an Electromyography/Nerve Conduction study ("EMG/NCV") of Henley's lower left extremity and restarting an anti-inflammatory. Dr. Scialabba also recommended that Henley be started on a physical therapy program to help alleviate his pain. On October 4, 2005, Dr. Ahmad, of Roanoke Neurological Associates, Inc., administered an EMG/NCV to Henley's lower left extremity and lubrosacral paraspinal muscles. Once again, results were normal. On October 6, 2005, Henley participated in physical therapy at Professional Therapies of Roanoke, Inc., and was provided with detailed instruction so that he may continue an independent physical therapy program once he was returned to the jail.

Sometime thereafter, Henley began writing letters to Dr. Scialabba requesting that the doctor recommend surgery for Henley's "bulging discs." On October 26, 2005, Dr. Scialabba sent Dr. Barnes a letter which specifically stated that he did not think that surgery was an option for Henley, but opined that if Henley's complaints persisted a course of anti-inflammatories and/or additional physical therapy may alleviate Henley's discomfort. On October 28, 2005, Dr. Scialabba examined plaintiff again. At that time, he informed Henley that there was no neurological cause for Henley's

medical complaints. He further advised Henley that after reviewing the MRI scans, the EMG/NCV, and x-rays he determined that surgery was not a recommended option for treating his back condition. On November 3, 2005, Dr. Barnes once again met with Henley to discuss Henley's medical complaints. Additionally, Dr. Barnes prescribed an anti-inflammatory, Ibuprofen, to treat Henley's ongoing discomfort. However, Dr. Barnes determined that Elavil was not medically necessary and declined to refill Henley's prescription.

On December 1, 2005, Henley reported to a watch commander that on November 30, 2005, he fell against a metal pole. Henley claimed that he did not immediately report the injury because he did not feel any pain at the time of the fall, rather the pain appeared after he took a shower. However, Henley refused to be examined by Dr. Barnes. Then, on December 5, 2005, Henley finally agreed to be examined by Dr. Barnes because he believed the knot in his back, an injury sustained in the fall, was getting worse. During the subsequent examination on December 8, 2005, Henley lamented that the "knot" on his spine was getting bigger and he could not bend at the waist because of severe back pain. However, Dr. Barnes determined that there was no "knot" on Henley's back, rather the only palpable or visible injury was a 3/4 inch scar. Henley did not believe Dr. Barnes and requested that he be examined by someone who "knew what they are talking about." Thereafter, from December 19, 2005 through January 1, 2006, Henley filed numerous medical complaints, but refused to be reexamined by Dr. Barnes. During this time, Henley also decided to discontinue his prescribed pain medication because he felt it disagreed with him and was not helping his pain.

Although there is little indication in the record as to any physical limitations Henley experienced because of his pain, there is a notation in his medical record that on October 25, 2005, Henley complained of difficulty going up and down the stairs to the "chow hall." In response, Dr.

5

Barnes issued Henley a temporary pass to have his meals in his pod; however, that pass was revoked on November 3, 2005. Additionally, there are notations in the record which indicated that plaintiff was able to leave the pod and participate in recreation. Furthermore, on December 27, 2005, an institutional employee observed Henley swinging his cane in a playful manner towards other inmates and did not appear to be in significant pain.

## II.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court is obligated to view the facts and inferences drawn from those facts in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996)(finding that the court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). A genuine issue of material fact exists if a reasonable fact finder could return a verdict in favor of the nonmoving party based on the evidence submitted. Id. at 248.

Henley alleges that Dr. Barnes subjected him to cruel and unusual punishment in violation

6

of the Eighth Amendment by failing to provide adequate medical treatment for his ongoing complaints of pain, numbness, and weakness in his left side and back. After reviewing the complaint, I am of the opinion that Henley has not presented any issue of material fact and that the defendant is entitled to judgment as a matter of law.

An inmate is not entitled to unqualified access to health care, rather the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Accordingly, in order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Shelton v. Angelone, 183 F.Supp.2d 830, 840 (W.D.Va. 2002) (quoting Cox v. District of Columbia, 834 F.Supp. 439, 441 (D.D.C. 1992)). Moreover, claims of medical judgment are not subject to judicial review, and mere malpractice or negligence in treatment does not amount to a claim of constitutional significance. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Estelle, 429 U.S. at 105-06.

Henley alleges that Dr. Barnes failed to provide him with adequate medical care for his ongoing back and leg pain. However, the record before the court establishes that this is a baseless allegation. Henley's medical record evinces that Dr. Barnes promptly acted on Henley's complaints

7

regarding ongoing pain and weakness in his left leg and back, blurred vision, and hearing loss, despite questioning the veracity of plaintiff's claims. In fact, after their initial meeting, Dr. Barnes referred Henley to a neurologist, Dr. Scialabba, for further testing. Following the neurological exam, Dr. Scialabba too doubted Henley's claims, but, once again, affording Henley the benefit of the doubt, recommended an MRI of Henely's brain and back. Accordingly, Dr. Barnes ordered an MRI, which revealed normal brain results, but also a slight central disc protrusion. Dr. Scialabba reviewed the results of the MRI and recommended an EMG/NCV to determine if there was any neurological cause for Henley's complaints and physical therapy to alleviate Henley's pain. Thereafter, Dr. Ahmad, another neurologist, administered an EMG/NCV; and, yet again, the results were normal. Nonetheless, Dr. Barnes started Henley in a physical therapy program. After reviewing all of the diagnostic testing results, Dr. Scialabba's final recommendation to Dr. Barnes stated only that should Henley's pain persist, Henley could be restarted on an anti-inflammatory and a physical therapy program. Additionally, Dr. Scialabba specifically stated that there was no neurological cause for Henley's pain and that he did not think Henley presented any medical condition which necessitated surgery. Shortly thereafter, Dr. Barnes prescribed Henley an anti-inflammatory.

Henley complains that Dr. Barnes refused to comply with the "specialists" recommendations as to the treatment or medication necessary to treat his ongoing pain. However, the record clearly establishes that Dr. Barnes ordered every diagnostic test recommended, restarted Henley on an anti-inflammatory, and started Henley in a physical therapy program. Accordingly, the court finds that Henley has not presented a genuine issue of material fact as the record clearly establishes that Henely received prompt and thorough medical care to treat his ongoing leg and back pain. Therefore, I find that the defendant's motion for summary judgment must be granted.

8

Furthermore, to the extent Henley claims Dr. Barnes denied him adequate medical care by refusing to reinstate his prescription for Elavil, it fails. Henley was initially prescribed Elavil for his problems with insomnia, and as Dr. Barnes felt this was no longer necessary and/or not an indicated use for Elavil, he declined to refill this prescription. In <u>Bowring</u>, the Fourth Circuit explicitly disavowed second-guessing the propriety or adequacy of a physician's treatment and implicitly gave deference to the sound professional judgment of the physician providing medical care. <u>Bowring</u>, 551 U.S. at 48. As noted above, the record reveals that Dr. Barnes provided plaintiff with regular and thorough medical care. Accordingly, the court finds that Henley's claims against Dr. Barnes amount to nothing more than a disagreement between an inmate and the prison physician as to the proper course of treatment and, thus, do not present a claim of constitutional magnitude.

Likewise, Henley's complaint that Dr. Barnes failed to properly diagnose or treat him for his alleged fall on November 30, 2005, and subsequently refused to refer him to a specialist is without merit. The record establishes that Henley initially refused treatment, but was in fact later examined and treated by Dr. Barnes. Again, this amounts to nothing more that a disagreement as to the proper course of treatment which is not actionable under the Eighth Amendment.

Additionally, to the extent that Henley believes that Dr. Barnes failed to recognize or treat his medical needs and addressed him in a disrespectful and unprofessional manner, such allegations do not present a colorable claim under § 1983. <u>See Estelle</u>, supra, at 105-106. Rather, these claim would arise, if at all, under state medical malpractice laws.

### III.

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the court may dismiss a complaint upon a finding that the action is "frivolous or malicious." 28 U.S.C. §§ 1915(e)(2)(B)(ii). A finding of frivolity

Case 7:05-cv-00663-JLK-mfu Document 30 Filed 03/23/06 Page 9 of 10 Pageid#: 242

can be made when the complaint lacks any basis in either fact or law. <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992). Thus, the court may dismiss a claim as "factually frivolous" under § 1915(e) if the facts alleged are clearly baseless. <u>Id.</u>; also see <u>Nasim v. Warden, Maryland House of Corrections</u>, 64 F.3d 951, 955 (4th Cir. 1995). As described above, there is no factual basis for Henley's claims against Dr. Barnes; accordingly, I find these claims should be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

## IV.

Based on the foregoing analysis, I find that the plaintiff has failed to present any issue of material fact and that the defendant is entitled to judgment as a matter and, therefore, grant defendant's motion for summary judgment. Furthermore, I find that the there exists no factual basis for plaintiff's complaint, and, therefore, dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Henley is hereby advised that this dismissal shall be considered a "strike" pursuant to 28 U.S.C. § 1915(g).

The Clerk of the Court is directed to send a certified copy of this Order to plaintiff.

ENTER: This 23rd of March, 2006.

Senior U.S. District Judge

10